**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

MARINA ROSS, on behalf of JACK L. ROSS,
deceased,

        Plaintiff,

        v.                              Case No. 3:14-cv-1968-JVB-CAN

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security Administration,

        Defendant.

## OPINION AND ORDER

Plaintiff Marina Ross seeks judicial review of the Commissioner's decision to deny her

deceased husband, Jack L. Ross, disability insurance and supplemental income benefits. She asks

this Court to reverse the administration's decision or, alternatively, remand the case to the

agency for reconsideration.

**A.     Facts**

Mr. Ross injured his left shoulder at work in November 2008. (R. at 25.) A subsequent

magnetic resonance imaging of his left shoulder revealed mild degenerative changes and a low-

grade tear of his supraspinatus tendon. *Id.* After his injury, Mr. Ross continued to complain of

shoulder pain. In January 2009, his orthopedic physician, Dr. Steven Wynder, performed an

arthroscopic glenoumeral debridement and subacromial decompression. *Id.* At a follow-up

examination, Dr. Wynder opined that Mr. Ross could not lift above waist, push or pull with his

left arm, or climb ladders. (R. 469.) Mr. Ross stopped working six months after his injury, on

May 15, 2009. (R. at 25.)

In September 2009, Mr. Ross had a second MRI of his left shoulder. (R. at 26.) It showed moderate degenerative changes in his acromioclavicular joint and a partial tear in his supraspinatus tendon. *Id.* Two months later, Mr. Ross applied for disability insurance and supplemental income benefits, alleging that he could no longer work as grinder, welder, tester, and machinist because of obesity, degenerative disc disease and an annular tear in her spine, degenerative joint disease in her right knee, and the loss of use of his left shoulder. (Pl.'s Br. at 3); (R. at 31.) The following month, Mr. Ross underwent a second arthroscopic surgery, which debrided his gleonohumeral joint. (Pl.'s Br. at 3.)

Mr. Ross's applications were denied initially and on reconsideration. (Pl.' Br. at 1.) He requested a hearing. *Id.* A hearing was held and thereafter, Administrative Law Judge Yvonne Stram determined that Mr. Ross was not disabled. (R. at 100–02.) Furthermore, she determined that Mr. Ross was able to perform a variety of light duty work despite his limitations. *Id.* However, because Mr. Ross turned fifty-five on August 11, 2011, ALJ Starm deemed Mr. Ross disabled in accordance with the Medical-Vocational Guidelines (f/k/a "GRID"). *Id.* Mr. Ross appealed this decision, challenging the onset date. (R. at 26.) While his appeal was pending, Mr. Ross died. (R. at 17.) His wife, Marina Ross was substituted as an interested party. *Id.* In February 2013, the Appeals Council affirmed ALJ Starm's decision in part and remanded the case for reconsideration of the onset date. *Id.*

On remand, ALJ Kathleen Eiler presided over a supplemental hearing. At the conclusion of the hearing, Ms. Ross requested another hearing if there was any doubt about the onset date. Her request was denied. *Id.* On July 26, 2013, ALJ Eiler found that Mr. Ross was not disabled before August 10, 2011, but did become disabled beginning on that date as a result of turning

fifty-five. At step-one of the disability analysis, she recognized that Mr. Ross had not engaged in gainful employment since May 15, 2009. (R. at 20.) At step-two, she acknowledge that Mr. Ross's alleged impairments were severe and could reasonably cause his alleged symptoms. *Id.* At step-three, she found that despite Mr. Ross's impairments, he could perform light duty work. (R. at 23.) At step-four, she concluded that Mr. Ross could not perform any of his past relevant work. (R. at 24.) At step-five, she determined that Mr. Ross was able to perform numerous light duty jobs in the national economy. Nonetheless, ALJ Eiler found that Mr. Ross was disabled as of August 11, 2011 because he turned fifty-five years old. (R. at 102.) ALJ Eiler's decision became the final decision of the Commissioner when the Appeals Council denied Ms. Ross's request to review it.

## A.    Standard of Review

This Court has authority to review Social Security Act claim decisions under 42 U.S.C. § 405(g). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). The Court will, however, ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).

## B.    Disability Standard

The Commissioner has established a five-step inquiry to evaluate whether a claimant qualifies for disability benefits. A successful claimant must show:

> (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy.

*Scheck v. Barnhart*, 357 F.3d 697, 699–700 (7th Cir. 2004).

A "no" at any step other than step three means that the claimant is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A "yes" leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Id.* The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## C.    Analysis

Ms. Ross argues that the ALJ misapplied Social Security Ruling 83–20 in finding that Mr. Ross did not become disabled until August 11, 2011. She insists that this case should be remanded so the ALJ may call an expert to determine his disability onset date. She does not challenge the ALJ's RFC findings and, in fact, raises a purely legal question: whether the ALJ should have applied SSR 83-20.

Ms. Ross also argues that the ALJ impermissibly relied on the GRID to find her husband disabled.

### (1)    *SSR 83-20 is inapplicable*

If the ALJ finds that the claimant is disabled, then she must establish the onset date of disability. *See* SSR 83–20, at *1. It follows, then, "[w]ith no finding of disability, there [is] no need to determine an onset date." *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008). Here, the ALJ deemed Mr. Ross disabled on August 11, 2011, the day he turned fifty-five. (R. at 33.) Under 20 C.F.R. Pt. 404, Subpt. P, App. 2, a claimant with little skill and advanced age (fifty-five or older), with the ability to perform light duty work is considered disabled. ALJ Eiler did not find that Mr. Ross was disabled at any other point of her analysis, nor did ALJ Starm in the

administrative proceedings. (R. at 17.) Instead, ALJ Eiler found that Mr. Ross's categorical shift from being a "closely approaching advanced age" to an "advanced age" rendered him disabled. This categorical shift does not trigger SSR 83–20. *Patterson v. Colvin*, No. 1:13-cv-553, 2014 WL 2511625 at \*2 (S.D. Ind. June 3, 2014) (slip opinion). Moreover, where the ALJ has never found the claimant to be disabled, she does not need to apply SSR 83–20. *Compare Campbell v. Chater*, 932 F. Supp. 1072, 1076–77 (N.D. Ill. 1996), *with Kenefick v. Astrue*, 535 F. Supp. 2d 898, 907 (N.D. Ill. 2008).

**(2)** *ALJ did not err in applying the grid*

Next, Ms. Ross argues that the ALJ's reliance on the grid to find her husband disabled was improper. (Pl.'s Br. at 11.) She cites *Allen v. Sullivan*, 977 F.2d 385, 389 (7th Cir. 1992), and *Warmonth v. Bowen*, 798 F.2d 1109, 1110 (7th Cir. 1986), for support. (Pl.'s Br. at 7.) These cases are unavailing to her cause. In *Allen*, the Court reversed that ALJ's decision denying Allen social security benefits in part because the ALJ failed to consider relevant evidence and instead relied on the grid to determine that he was not disabled. 977 F.3d at 388. Unlike *Allen*, however, ALJ Eiler did not rely on the grid to deny Mr. Ross disability benefits. To the contrary, she used the grid to award him disability. Additionally, ALJ Eiler thoroughly examined the record, including the Ross' testimony about Mr. Ross's impairments, his daily living activities, x-rays, MRIs, and the treating and state-consulting physicians' opinions. (R. at 26–30.)

In *Warmonth*, the Court explained:

> Application of the grid is precluded, however, in cases where a claimant's non-exertional limitation restricts the full range of employment opportunities at the level of work that he is physically capable of performing; in such cases, resolution of the issue generally will require consultation of occupational reference materials or the services of a vocational expert.

798 F2d at 1110 (citations omitted).

The Court went on to quote *Heckler v. Campbell*, 461 U.S. 458, 462 n. 5 (1983) for the proposition that "the regulations provide that the rules [of the grid] will be applied only when they describe a claimant's abilities and limitations accurately." 798 F.2d at 1110. With this frame-work in mind, the Court reversed the lower courts award of summary judgment to the Secretary of Health and Human Services, because the ALJ relied "exclusively" on the grid at her step-five analysis, and remanded the case to determine whether there exist a significant number of sedentary jobs that Warmoth can perform despite his respiratory ailment. *Id.* at 1111–13. As previously stated, ALJ Eiler did not rely solely on the grid for any of her determinations. At step-five, she consulted a vocation expert and posed hypothetical questions consistent with Mr. Ross's residual functional capacity. (R. at 50–53.) Ms. Ross does not contest Mr. Ross's RFC. Thus, ALJ Eiler's use of the grid was permissible.

**E.      Conclusion**

The Court affirms the decision of the Acting Commissioner.

SO ORDERED on March 31, 2016

  S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE